**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

SULTAN SINGH,

Petitioner,

v.

MOISES BECERRA, et al.,

Respondents.

Case No. 1:26-cv-05516-JLT-CDB

ORDER GRANTING PETITIONER'S MOTION TO ENFORCE JUDGEMENT; AND DIRECTING RESPONDENTS TO PROVDE NEW SUBSTANATIVE BOND HEARING

(Doc. 14)

On July 29, 2026, this Court entered judgment on Petitioner Sultan Singh's petition for a writ of habeas corpus. (Doc. 12.) The Court ordered Respondents to provide Petitioner with a constitutionally compliant bond hearing at which Respondents are to bear the burden of proof by clear and convincing evidence to show that Petitioner presents a flight risk or danger to the community. (*Id*. at 5.) On August 12, 2026, a bond hearing was held pursuant to this Court's order. On August 19, 2026, Petitioner filed a motion to enforce the Court's judgment, seeking an order requiring his immediate release or, in the alternative, a new bond hearing. (Doc. 14. at 13.) For the reasons set forth below, the motion is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This Court has summarized the factual and procedural history behind this action in a previous order and incorporates that by reference here. (*See* Doc. 12.) On August 12, 2026, Petitioner appeared before an immigration judge with his attorney present. (*See* Doc. 17, Digital

Audio Recording "DAR".) The IJ began the bond hearing by saying the hearing was pursuant to an order of the district court and that the burden of proof, clear and convincing evidence, is to be assigned to the Department of Homeland Security. (DAR at 00:48 - 1:10.) Counsel for DHS questioned Petitioner regarding his arrest on March 27, 2025, for leaving the scene of an accident resulting in injury, a felony violation of California Vehicle Code § 20001(a). (*Id*. at 4:25 – 8:30.) Petitioner stated that although he was driving the vehicle, he "didn't know what happened" and "did not hit anyone." (*Id*.) Petitioner's counsel then questioned Petitioner about his release on bond following his arrest and his compliance with his conditions of bond. (*Id*. at 9:57 – 10:24.) The IJ questioned Petitioner about the circumstances surrounding his arrest. (*Id*. at 11:46 – 16:46.) Counsel for DHS provided a closing argument in support of denying bond, citing Petitioner's felony arrest and the generalized extreme danger to the community posed by "undocumented aliens crashing and killing people in the road." (*Id*. at 17:32 – 17:56.) DHS then argued that if Petitioner was in fact innocent, he would have presented the police report to "show that he had nothing to do with the incident." (*Id*. at 17:56 – 18:11.) DHS also argued Petitioner is a flight risk because of the lack of evidence of strong asylum claims. (*Id*. at 18:11 – 18:35.) Petitioner's counsel then presented rebuttal evidence, noting several pieces of inconsistent evidence in the police report of the accident and arguing that Petitioner should be presumed innocent for immigration purposes. (*Id*. at 20:20- 21:13.) At the conclusion of the hearing, the IJ stated that after considering all of the evidence, DHS had met its burden of establishing by clear and convincing evidence that Petitioner constitutes a danger and a flight risk. (*Id*. at 23:41 – 24:06.) The IJ cited the "serious nature" of the pending felony charge and the inconsistencies between Petitioner's testimony and the police reports. (*Id*.) That same day, the IJ issued a written order outlining his findings. (*See* IJ Order, Doc. 14-2 at 2.)

On August 19, 2026, Petitioner, through counsel, filed a motion to enforce, alleging, *inter alia,* that the IJ's written order explicitly placed the burden of proof on Petitioner, in direct violation of this Court's order. (Doc. 14 at 7.) On August 27, 2026, Respondents filed an opposition, arguing that "[a]lthough the written order mistakenly states, that "Respondent" (i.e., Petitioner here) did not meet his burden, the oral decision shows that the burden was correctly

placed on DHS." (Doc. 16 at 2.) Respondents also filed the audio recording of the bond hearing. (Doc. 17.) Petitioner filed a reply on August 31, 2026. (Doc. 18.)

## II. LEGAL STANDARD

This Court has clear authority to ensure that the Government acts in accordance with its orders granting relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. 17-cv-5948, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).

In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." *Id*. (citation and quotations omitted); *see also Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (The Court's review for abuses of discretion is limited to those which allege violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions) (citation and quotations omitted). In other words, the Court's review is effectively limited to whether the IJ's decision "reflects 'clear legal error' or is unsupported by sufficient evidence." *Hilario Pankim v. Barr*, No. 20-cv-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020). While district courts are "under no obligation to address [Petitioner's] new arguments under the ambit of ensuring compliance with the earlier order," *Leonardo* 646 F.3d 1157 at 1161, the reviewing court must always bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

As a threshold matter, the Court waives the prudential exhaustion requirement in this case

for habeas petitions seeking relief pursuant to 28 U.S.C § 2241. *See Castro-Cortez v. I.N.S.*, 239 F.3d 1037, 1047 (9th Cir. 2001), overruled on other grounds by *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 (2006); *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823 at *5, n.7 (E.D. Cal. Jan. 29, 2026) (waiving exhaustion for enforcement motion challenging the legality of a bond hearing because of irreparable harm from prolonging the petitioner's already lengthy detention); *see also, Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307 (E.D. Cal. Mar. 13, 2026) (excusing exhaustion despite the petitioner not making "an explicit showing" of an excuse in the motion to enforce, because the court had previously found ongoing irreparable harm in its previous order). Such a waiver, however, does not expand the narrow scope of the Court's review: the Court will only determine whether the bond hearing was constitutionally adequate as required by its prior order, and not delve into areas of discretionary decisions made by the IJ. *See, infra*, Legal Standard.

**B. The IJ's Written Memorandum Violated this Court's Order**

Petitioner argues that the IJ's August 12, 2026, written memorandum treated the bond proceedings as an "ordinary respondent-initiated redetermination pursuant to 8 C.F.R. § 1003.19." (Doc. 14 at 6 (citing IJ Order.).) The Court agrees.

The Ninth Circuit has explained that if the immigration court "expressly cited and applied the relevant case law in rendering its decision," the Court accepts that it "applied the correct legal standard," unless there is an indication that "something is amiss." *Martinez*, 124 F.4th at 785 (cleaned up); *See Mendez-Castro v. Mukasey*, 552 F.3d 975, 980 (9th Cir. 2009). Here, there are multiple indicators that "something is amiss" in the IJ's written memorandum. First, the IJ stated that Petitioner "has requested a custody redetermination pursuant to 8 C.F.R. § 10003.19 following detention by the Department of Homeland Security." (IJ Order at 1.) As stated by the Ninth Circuit:

> When a non-citizen is detained pursuant to § 1226(a), "the DHS district director makes an initial custody determination and may allow the alien's release on bond." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1058 (9th Cir. 2008) (citing 8 C.F.R. § 236.1(d)). "If the alien objects to the director's bond determination, he may request a bond redetermination hearing before an IJ at any time before the issuance of an administratively final order of removal." *Id*. (citing 8 C.F.R. §§

> 236.1(d), 1003.19(c)). At this stage, the burden is on the non-citizen to "establish to the satisfaction of the Immigration Judge ... that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006).

*Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017)(footnotes omitted). Such a request for initial custody determination pursuant to 8 C.F.R. § 10003.19 is solely an administrative remedy. In contrast, Petitioner's bond hearing was held pursuant to this Court's order, which clearly instructed that DHS was to bear the burden of proof by clear and convincing evidence to show that Petitioner presents a flight risk or danger to the community as a matter of due process. *See J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO, 2025 WL 2938808, at *18 (E.D. Cal. Oct. 16, 2025) ("Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of proving a justification for the re-detention.") Therefore, it was factually incorrect for the IJ to state that Petitioner requested a custody redetermination pursuant to 8 C.F.R. § 10003.19

Furthermore, in the conclusion of the order, the IJ explicitly wrote "[b]ecause the Respondent has failed to meet his burden of proof to demonstrate otherwise, the request for a bond must be denied." (IJ Order at 2.) With this, the IJ explicitly placed the burden of proof on Petitioner rather than DHS. Respondents maintain that IJ' statement was a "mistake" and that the oral decision shows that the burden was correctly placed on DHS. (Doc. 16 at 2.) To the extent there is inconsistency between the two, Respondents cite the EOIR Policy Manual, Part II, Section 8.3(e)(7) for the proposition that the oral on-the-record decision takes priority. In his reply, Petitioner notes that the EOIR Policy Manual provision Respondents invoke does not supply that rule. (Doc. 18 at 3.) Part II, Section 8.3(e)(7) of the EOIR Policy Manual reads as follows:

> **Decision** - The Immigration Judge's decision is based on any information that is available to the Immigration Judge or that is presented by the parties. *See* 8 C.F.R. § 1003.19(d).
>
> Usually, the Immigration Judge's decision is rendered orally. If either party appeals, the Immigration Judge prepares a written decision based on notes from the hearing, however the record will not be transcribed.

The Court agrees with Petitioner in that nothing in Section 8.3(e)(7) mandates that the oral on-the-record decision takes priority in the face of inconsistencies between the oral record and the written record. If anything, the fact that written decisions are **only** triggered when either party appeals the bond determination suggests that the IJ's written decision is critical – if not singularly – to the Board of Immigration Appeal's review of a bond hearing. Thus, it would be highly prejudicial to Petitioner's appeal if a written bond order blatantly stated the incorrect burden of proof applied at the hearing. Because the IJ committed clear legal error by failing to apply the incorrect burden of proof, the Court finds that the appropriate remedy in this case is to order Respondents to provide Petitioner with a new bond hearing that complies with this Court's order. Accordingly, the Court **ORDERS**:

1. Petitioner's motion to enforce the Court's prior order (Doc. 16) is **GRANTED**.
2. Within **14 days** of the date of service of this order, unless Petitioner consents to a later date, Respondents are ordered to provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," *id*. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 1000 (9th Cir. 2017).
3. Prior to the bond hearing, the Petitioner **SHALL** receive at least 72 hours-notice of the scheduled hearing, **SHALL** have the right to be represented by counsel at the hearing and **SHALL** be entitled to appear at the hearing. If his counsel has filed an appearance in the immigration proceedings, Respondents **SHALL** ensure that counsel receives at least 72 hours-notice of the scheduled hearing.
4. Respondent **SHALL** file a notice of compliance with this Court's Order and, if a bond hearing was held, identify the outcome of the hearing. In addition,

Respondents **SHALL** file a copy of the immigration judge's written order with the Court.

IT IS SO ORDERED.

Dated: _October 24, 2026_

UNITED STATES DISTRICT JUDGE